# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

ABIGAIL CABALLERO,

      Plaintiff,

v.                                    Case No: 6:16-cv-1056-Orl-GJK

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

# MEMORANDUM OF DECISION

Abigail Caballero (the "Claimant"), appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") determining that Claimant was not disabled prior to November 20, 2015. Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") erred in: 1) not consulting a medical expert when determining Claimant's disability onset date; and 2) applying incorrect legal standards to the opinions of Dr. Frank J. Yanez. Doc. No. 21 at 14-17, 19-22. Claimant requests that the Commissioner's decision be reversed and remanded for further proceedings. *Id.* at 28. For the reasons set forth below, it is **ORDERED** that the Commissioner's final decision be **AFFIRMED**.

## I.    PROCEDURAL BACKGROUND

On June 1, 2011, Claimant filed an application (the "First Application") for Disability Insurance Benefits ("DIB"). R. 168. In the First Application, Claimant alleges an onset date of January 31, 2011. *Id.* On June 21, 2011, the First Application was initially denied. R. 69. On October 3, 2011, the First Application was denied upon reconsideration. R. 79. On October 28, 2011, Claimant filed a request for hearing before the ALJ. R. 85. On November 28, 2012, Claimant

attended a hearing before the ALJ. R. 27-44. On January 9, 2013, the ALJ issued an unfavorable decision. R. 10-21. On March 7, 2013, Claimant filed a request for review of the ALJ's decision. R. 7-9. On May 29, 2014, the Appeals Council denied Claimant's request for review. R. 1-6. On July 10, 2014, Claimant appealed the Commissioner's decision to this Court. *See Caballero v. Comm'r of Soc. Sec*, 6:14-cv-1110-DAB (Doc. No. 1). On July 30, 2015, U.S. Magistrate Judge David A. Baker ordered that the case be reversed and remanded for further proceedings. *Id.* (Doc. No. 19).

On August 11, 2014, while Claimant's appeal was pending with Judge Baker, Claimant filed a separate application (the "Second Application") for DIB and Supplemental Security Income ("SSI"). R. 681. In the Second Application, Claimant alleges an onset date of October 29, 2011. *Id.* On November 4, 2014, the Second Application was initially denied. R. 607, 613. On April 3, 2015, the Second Application was denied upon reconsideration. R. 617, 623. On September 1, 2015, the Appeals Council remanded the First Application to the ALJ for further proceedings, pursuant to Judge Baker's order. R. 598. The Appeals Council recognized the pendency of the Second Application, and ordered the ALJ to consolidate the First and Second Applications. R. 600.

On March 10, 2016, Claimant attended a second hearing before the ALJ. R. 457-485. On April 12, 2016, the ALJ issued a partially favorable decision finding Claimant became disabled on November 20, 2015. R. 432-448. On June 17, 2016, Claimant filed this appeal. Doc. No. 1.

## II.    STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67

F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III. THE ALJ'S DECISION

In a January 12, 2016 treatment note, Dr. Joseph Kavanagh found that Claimant was injured in a motor vehicle accident on November 20, 2015 (the "Accident Date"). R. 977. Dr. Kavanagh's finding is central to the ALJ's decision.

The ALJ determined that January 31, 2011 was Claimant's alleged onset date.[1] R. 432. At step one of the sequential evaluation process, the ALJ found that Claimant has not engaged in substantial gainful activity since her alleged onset date.[2] R. 435. At step two, the ALJ made two findings. *Id.* First, the ALJ found that since Claimant's alleged onset date, she has had a single

---

[1] As noted above, Claimant's alleged onset date in the First Application was January 31, 2011. R. 168. Claimant's alleged onset date in the Second Application was October 29, 2011. R. 681.
[2] The Social Security regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citing 20 C.F.R. § 404.1520). The ALJ must determine: 1) whether the claimant has engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the severe impairment meets or equals the severity of one of the listed impairments; 4) whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work; and 5) whether (considering the claimant's RFC, age, education, and work experience) the claimant could perform other work within the national economy. *Id.*

severe impairment, a back disorder. *Id.* Second, the ALJ found that since the Accident Date, Claimant has had the following severe impairments: a back disorder and a history of a motor vehicle accident. *Id.* At step three, the ALJ found that since Claimant's alleged onset date, she has not had an impairment (or combination thereof) that meets or medically equals the severity of one of the listed impairments. R. 437.

At step four, the ALJ made two findings as to Claimant's residual functional capacity ("RFC"), one pre-Accident Date and one post-Accident Date. R. 437, 445. First, the ALJ found that before the Accident Date Claimant had the RFC to perform light work with certain exertional and nonexertional limitations. R. 437. In making such a finding, the ALJ made detailed findings regarding the medical evidence before the Accident Date. R. 438-445. For example, the ALJ recognized a May 9, 2011 treatment note from Dr. Marc Gerber finding that Claimant was able to sit, stand, and transfer without difficulty. R. 312, 440. The ALJ gave significant weight to a May 2011 medical source statement of Dr. Gerber, finding that Claimant reached maximum medical improvement and was capable of light duty work. R. 310, 440. The ALJ also gave significant weight to an October 2014 medical source statement from Dr. Carol Grant, noting Claimant's full range of motion in the shoulders and ambulation without an assistive device. R. 442, 873-874. The ALJ also considered evidence (and the conditions stated therein) given after the January 9, 2013 unfavorable decision on the First Application, finding that "the record does not support a finding that these conditions have presented the [Claimant] with even minimal limitations …" R. 440.

In the second half of the ALJ's step four analysis, the ALJ found that post-Accident Date the Claimant had the RFC to perform light work with certain exertional and non-exertional limitations.[3] In making this finding, the ALJ cited an opinion from Dr. Kavanagh, noting

---

[3] In the post-Accident Date RFC, the ALJ included additional nonexertional limitations compared to Claimant's pre-Accident Date RFC. *Cf.* R. 437, 445. Specifically, the ALJ limited Claimant to simple and unskilled work. R. 445.

Claimant's loss of normal curvature of the cervical spine. R. 445, 977. The ALJ also noted Dr. Kavanagh's finding that Claimant had "disc bulging at [the] C3-4 and C4-5" areas of the spine. *Id.* The ALJ cited a December 2015 treatment note from the Infinite Health and Spine Center indicating that Claimant's prognosis was guarded and uncertain. R. 445, 985.

At step four, the ALJ found that Claimant has been unable to perform any past relevant work since her alleged onset date. R. 446. At step five, the ALJ found that pre-Accident Date, there were a significant number of jobs in the national economy that Claimant could have performed. R. 447. The ALJ found that post-Accident Date, there are no jobs existing in significant numbers in the national economy that the Claimant can perform. R. 447-448. Accordingly, the ALJ found that Claimant was not disabled pre-Accident Date, but was disabled post-Accident Date. R. 448.

## IV. ANALYSIS

### A. Failure to Consult Medical Expert

Claimant argues that the ALJ committed reversible error by failing to call a medical expert to establish Claimant's onset date of disability. Doc. No. 21 at 14-17. In the Joint Memorandum, Claimant cites Social Security Ruling ("SSR") 83-20 as standing for the proposition that a medical expert should have been consulted. *Id.* at 14-15. The Commissioner argues that a medical expert was not needed, because the ALJ found the medical evidence established that Claimant became disabled post-Accident Date. *Id.* at 17-19.

"SSR 83–20 describes what the ALJ must consider when establishing the onset date of disability." *Nixon v. Astrue*, Civil Action No. 1:11–CV–2032–JSA, 2012 WL 5507310, at * 4 (N.D. Ga. Nov. 14, 2012). In many cases, a claimant's onset date is critical because "it may affect the period for which the individual is entitled to or eligible for any benefits." *Touchton v. Comm'r*

---

The ALJ also found that Claimant is unable to perform any work activities for a six to ten-minute period per hour, every hour. *Id.* Neither of these nonexertional limitations are found in Claimant's pre-Accident Date RFC. R. 437.

*of Soc. Sec.*, 6:14-cv-709-Orl-TBS, 2015 WL 12859393, at *3 (M.D. Fla. Jul. 13, 2015) (citing SSR 83-20, 1983 WL 31249, at * 1 (1983)). When making a determination about a claimant's disability onset date, the Court considers "the claimant's alleged onset date, the claimant's work history, and medical and other evidence." *Id.* According to SSR 83-20, medical evidence should "serve … as the <u>primary element</u> in the onset determination." *Id.* (emphasis added). Accordingly, an ALJ need not adopt a claimant's alleged onset date if it is unsupported by the medical evidence. *See Moncrief v. Astrue*, 300 Fed. Appx. 879, 880-881 (11th Cir. 2008).[4]

"[C]ourts have generally interpreted SSR 83-20 to require that an ALJ obtain the opinion of a medical expert <u>when the medical evidence is either inadequate or ambiguous as to the specific date of onset</u>." *Nixon*, 2012 WL 5507310 at * 4-7 (remanding because "the ALJ [appeared] to have picked an arbitrary onset date … with almost a complete dearth of evidence) (emphasis added); *Lavender v. Comm'r of Soc. Sec.*, No: 2:09-cv-383-FtM-DNF, 2010 WL 3860739, at * 4-6 (M.D. Fla. Sept. 30, 2010) (finding a medical expert necessary to determine a claimant's onset date "based upon the lack of medical evidence in the record due to the claimant's doctor misplacing, losing, or destroying the medical records"); *Powell v. Astrue*, No: 7:11-CV-105 (HL), 2013 WL 752961, at *5 (M.D. Ga. Jan. 29, 2013) (remanding because "[t]he ALJ does not specifically state how this particular onset date was chosen or why the impairments became disabling after [the onset date], but not before"). Accordingly, if there is sufficient medical evidence for the ALJ to determine a claimant's disability onset date, a medical expert is not required. *Goldsby v. Astrue*, No. 2:11-CV-03411-RDP, 2013 WL 1176179, at * 5 (M.D. Ala. Mar. 18, 2013).

In *Goldsby*, the Court found that the ALJ did not need to consult a medical expert to determine a claimant's disability onset date because the medical evidence was sufficient:

---

[4] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

> A close examination of the text of SSR 83–20 reveals that its requirement that an ALJ consult a medical advisor before inferring the timing of onset is inapplicable to this case. <u>SSR 83–20 does note the importance of determining the proper onset of disability, but only requires an ALJ to consult a medical advisor to assist in the onset determination "when onset must be inferred."</u> SSR 83–20, 1983 WL 31249, at *3 (Aug. 20, 1980). However, onset need only be inferred in a certain set of cases. <u>Specifically, SSR 83–20 notes the need for inference in cases involving "slowly progressive impairments, [where] it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling."</u> *Id*. at *2. Thus, Plaintiff's argument that an inference of onset was necessary because the ALJ could have doubt about the onset period is contrary to the text of SSR 83–20 itself.
>
> <u>Under the actual requirements of SSR 83–20, the ALJ was not required to consult a medical expert in this case. The record makes clear that the ALJ relied on medical evidence dating from before and during the alleged period of disability, and therefore did not face a situation where it was "impossible to obtain medical evidence establishing the precise date an impairment became disabling."</u> *Id*. <u>Plaintiff alleged an onset date of September 13, 2004 with a date last insured of September 30, 2007 …. In her written opinion, the ALJ explicitly considered and rejected this argument, relying upon medical records from throughout this alleged disability period, even discussing medical records from October 2003, nearly a year before Plaintiff's alleged onset date …</u>

*Goldsby*, 2013 WL 1176179 at * 5 (emphasis added). Thus, the Court found that sufficient medical evidence made the use of a medical expert unnecessary to determine the claimant's onset date. *Id.* The Court noted the ALJ's reliance on the medical evidence before and during the alleged period of disability. *Id.* The undersigned finds *Goldsby* persuasive.

As noted above, the ALJ provided a detailed analysis of the medical evidence during Claimant's alleged duration of disability before the Accident Date. R. 439-445. The ALJ noted a May 9, 2011 treatment note from Dr. Gerber finding that Claimant was able to sit, stand, and transfer without difficulty. R. 312, 440. The ALJ gave significant weight to a May 2011 medical source statement from Dr. Gerber, finding that Claimant reached maximum medical improvement

and was capable of light duty work. R. 310, 440. The ALJ also gave significant weight to an October 2014 medical source statement from Dr. Grant, noting Claimant's full range of motion in the shoulders and ambulation without an assistive device. R. 442, 870-874. Thus, similar to *Goldsby*, the ALJ considered the medical evidence during Claimant's alleged period of disability, and found that Claimant was not disabled prior to the Accident Date. R. 435-R. 438-445.

The ALJ did not arbitrarily choose the Accident Date as Claimant's disability onset date. *Nixon,* 2012 WL 5507310 at * 4-7; *Powell*, 2013 WL 752961 at *5. The ALJ recognized Dr. Kavanagh's finding that Claimant was injured in a motor vehicle accident, and found Claimant's history of the motor vehicle accident to be a severe impairment. R. 435, 977. Furthermore, the ALJ considered the medical evidence post-Accident Date. R. 445-446. As noted above, the ALJ considered Dr. Kavanagh's findings that Claimant had a "noted loss of normal curvature of the cervical spine" and "bulging at C3-4 and C4-5" areas of the spine. R. 445, 977. The ALJ also considered a December 2015 treatment note indicating that Claimant's prognosis was guarded and uncertain. R. 445, 985. Based on such evidence, the ALJ found "that the record indicated that [Claimant] became more limited as a result of this additional impairment." R. 445. Thus, because the ALJ explicitly considered the medical evidence both before and after the Accident Date, the undersigned finds no error in ALJ's determination of Claimant's disability onset date. *See Goldsby*, 2013 WL 1176179 at * 5.

**B. Dr. Yanez**

On April 19, 2011, Claimant made her first visit to Dr. Yanez. R. 402. Claimant would visit Dr. Yanez multiple times from April 2011 to May 2015. R. 367-405, 411-427. *See also* Doc. No. 21 at 6-13. The parties do not dispute that Dr. Yanez is a treating physician. Doc. No. 21 at 19-27. After each visit, Dr. Yanez recorded his impressions in a treatment note. R. 367-405, 411-

427. While treating Claimant, Dr. Yanez completed four Physical Capacity Examinations (the "PCEs").[5] R. 347-348, 359-366, 994-995, 996-997. According to Claimant, all four PCEs "would preclude [Claimant] from performing sedentary work on a full time basis." Doc. No. 21 at 20. For example, all four PCEs state that Claimant can frequently lift no more than ten pounds. R. 347, 360, 994, 996. All four PCEs state that Claimant is limited in pushing and pulling. R. 348, 360, 995, 997.

In his opinion, the ALJ addressed Dr. Yanez's treatment notes:

> Progress notes from Frank Yanez, M.D., for the period of April 19, 2011, through November 16, 2012, show treatment for left shoulder pain, neck and back pain, left and right wrist pain, elbow pain, and depression. <u>Dr. Yanez has noted in his records that [Claimant] has a normal range of motion in the neck and spine. She had normal ranges of motion of both upper extremities and left lower extremity.</u> A restricted range of motion of the right lower extremity was noted and attributed to knee pain. A physical examination revealed paraspinal muscle tenderness present and moderate reduced lumbar spine extension. <u>Paraspinal muscle strength and tone were within normal limits. Range of motion was noted to be normal [in] the right upper and left upper extremities with no joint crepitus present and no pain with joint motion. Shoulder, elbow, and wrist joint stability was normal. Hip, knee, and ankle stability was normal in the left and right lower extremities. Judgment and insight were intact for everyday activities and social situations. [Dr. Yanez's] more recent treatment records are consistent with his earlier records …</u>

R. 441-442 (citations omitted) (emphasis added). Thus, the ALJ summarized Dr. Yanez's treatment notes and noted that they generally reflected a normal range of motion in Claimant's neck, spine, and extremities. *Id.* The ALJ then weighed the PCEs, noting that he is "unable to give these opinions more than some weight:"

> With respect to the assessments of February [13th] and June [7th] of 2012, the signatures on these forms were noted in the prior decision to be illegible [R. 346-348, 358-366]. An assessment by [Dr. Yanez], compared to these earlier documents, indicates that he may

---

[5] The PCEs were completed on February 13, 2012, June 7, 2012, February 21, 2013, and March 11, 2014. R. 348, 366, 995, 997.

> have been the author of them. The undersigned has considered these assessments, as well as the assessment from March [11th] of 2014 [R. 992- 997]. <u>Again, the degree of limitation identified is so extreme as to be considered nearly implausible and the record simply lacks objective findings to support them. It was noted that [Claimant] is unable to [lift] less than ten pounds on an occasional basis and had sitting, standing, and walking restrictions that preclude full time work [R. 360]. It was noted, without explanation, that [Claimant] must avoid all exposure to temperature extremes, wetness, humidity, noise, vibration, and pulmonary irritants [R. 363]. By contrast, [Claimant] has denied heat or cold intolerance [R. 367]. Dr. Yanez has reiterated the opinion that [Claimant] is limited to less than sedentary work [R. 994]. However, the degree of limitation identified on these forms is not consistent with his treatment notes, referenced earlier in this decision, wherein he noted normal ranges of motion.</u>

R. 443 (emphasis added).[6] Thus, the ALJ gave only some weight to the PCEs because they were contradicted by Dr. Yanez's own treatment notes, which the ALJ found to generally show a normal range of motion in Claimant's back, neck, and extremities.[7] *Id.* Furthermore, the ALJ found that the environmental restrictions found in the PCEs were contradicted by Claimant's own denial of heat and cold intolerance. *Id.*

Claimant argues that the ALJ failed to apply the proper legal standards to the PCEs. Doc. No. 21 at 19-22. Specifically, Claimant argues that the ALJ's decision is not based on substantial evidence because the ALJ ignored certain portions of Dr. Yanez's treatment notes when finding that they contradicted the PCEs. *Id.* at 20-22. The Commissioner argues that the ALJ applied the

---

[6] The ALJ misstated the record by stating "[i]t was noted, <u>without explanation</u>, that [Claimant] must avoid all exposure to temperature extremes, wetness, humidity, noise, vibration, and pulmonary irritants." R. 443 (citing R. 363) (emphasis added). Dr. Yanez did provide an explanation for his findings. R. 363. Dr. Yanez noted Claimant's asthma and cervical/lumbar disc diagnoses and found that "all these environmental changes give [Claimant] discomfort." *Id.* Nevertheless, the undersigned finds such an error harmless because a proper statement of the record would not have changed the ALJ's finding that Dr. Yanez's treatment notes contradicted the PCEs. R. 443. *See also Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (noting that an ALJ's error is harmless if a proper application of the law would not have changed the administrative result).

[7] The ALJ does not explicitly mention the February 21, 2013 PCE in the above analysis. R. 443. However, the ALJ does cite the February 21, 2013 PCE when noting that "Dr. Yanez has reiterated the opinion that [Claimant] is limited to less than sedentary work." R. 443 (citing R. 994). Thus, the ALJ considered all four PCEs at issue.

proper legal standards to the PCEs because the ALJ found the PCEs conclusory and unsupported by Dr. Yanez's own treatment notes. *Id.* at 22-27.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part in determining whether a claimant is disabled. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Absent good cause, the opinion of a treating physician must be accorded substantial weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). However, there are a few situations in which good cause allows an ALJ to give a treating physician's opinion less than substantial weight. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Specifically:

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Id.* Thus, good cause exists to give a treating physician's opinion less than substantial weight when the opinion is not bolstered by the evidence, evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Id.*

The ALJ applied the proper legal standards to the PCEs. The ALJ explicitly addressed how the PCEs were contradicted by Dr. Yanez's own treatment notes. R. 443. Specifically, the ALJ found that the functional limitations in the PCEs are contradicted by Dr. Yanez's own treatment

notes, which the ALJ found generally showed a normal range of motion in Claimant's neck, spine, and extremities. R. 441-442, 443. The ALJ also noted that the environmental restrictions found in the PCEs are contradicted by Claimant's denial of heat and cold intolerance. R. 443. Under *Winschel*, such reasons are good cause for giving the PCEs less than substantial weight. *Winschel*, 631 F.3d at 1179. Accordingly, the undersigned finds no error in the ALJ's treatment of the PCEs.

Claimant states that the ALJ "cherry-picked" the evidence when finding that Dr. Yanez's treatment notes contradicted the PCEs. Doc. No. 21 at 20. Claimant provides a list of evidence reflecting favorably on her disability, arguing that such evidence was overlooked when the ALJ gave only some weight to the PCEs. *Id.* at 21-22. Nevertheless, the undersigned declines the invitation to reweigh the evidence. As stated above, when the ALJ applies the proper legal standards, this Court will affirm the decision, even if the Court would have reached a contrary result as finder of fact, and even if the Court finds that the evidence preponderates against the ALJ's decision. *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). Here, the undersigned finds that the ALJ applied the proper legal standards to the PCEs. *See supra* pgs. 9-12. Accordingly, the undersigned affirms the ALJ's decision.

## V.     CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and
2. The Clerk is directed to award judgment to the Commissioner and to close the case.

**DONE and ORDERED** in Orlando, Florida on May 10, 2017.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
Suite E
3200 Corrine Dr.
Orlando, FL 32803

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602-4798

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Douglas A. Walker
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224